Ben A. Reid and Dorothy Reid v. Commissioner.
Reid v. Commissioner
Docket No. 1047-71.
United States Tax Court
T.C. Memo 1972-205; 1972 Tax Ct. Memo LEXIS 51; 31 T.C.M. (CCH) 1019; T.C.M. (RIA) 72205; September 25, 1972, Filed. Tried in Frankfort, Kentucky. *51 Petitioners sold dirt and share from their land to a joint venture involved in highway construction. Petitioners' agreement with the venture required the venture to extract all the materials within a designated area. Held: Petitioners sold the dirt and shale in place and are entitled to report the proceeds from the sale as long-term capital gain. Robert L. Ackerson, for the petitioners. Christopher D. Rhodes, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent determined the following deficiencies in the income taxes of petitioners: Year
Deficiency
1966
$ 4,091.17
1967
10,144.90
1968
15,123.51 The parties have settled all issues except one: whether amounts that petitioners received in 1967 and 1968 from the sale of fill dirt and shale were ordinary income or long-term capital gains. Findings of Fact Some of the facts were stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Petitioners are Ben A. Reid and his wife, Dorothy Reid, who at all relevant times resided in Louisville, Ky. For taxable years 1966, 1967 and 1968 petitioners filed joint *52 income tax returns with the district director of internal revenue, Louisville, Ky. In 1941 petitioners acquired a tract of land in Floyd County, Ind., which consisted of approximately 250 acres. From its acquisition this land was operated by petitioners as a dairy farm. During the years in issue the improvements to the land included a house, two barns, three silos and other farm improvements. In July 1967 petitioners were approached by a joint venture consisting of R.B. Potasnick, Inc., and J.D. Barter Construction Co., Inc. (Potasnick-Barter venture) for the purpose of determining whether petitioners would be willing to sell shale and dirt from their Floyd County farm. The venture needed the dirt and shale in order to perform a construction contract with the Department of Highways of the Commonwealth of Kentucky. The dirt and shale were to be used in construction of a highway in Jefferson County, Ky., which is located directly across the Ohio River from Floyd County, Ind. On July 26, 1967, petitioners as "vendors" and the Potasnick-Barter venture as "vendees" entered into a written agreement, parts of which follow: The Vendors in consideration of 10 cents per cubic yard for *53 all dirt and shale removed from that part of Vendors land hereinafter described, payable $1,500.00 upon execution of this contract and $1,500.00 at the beginning of each year that the contract is in effect as advance payments, sells and conveys to the Vendees, with full warranty and title all dirt and shale contained within the hereinafter described property. On the 15th day of each succeeding month following the execution of this contract the Vendee shall pay to the Vendor his estimate of such dirt and shale as has been removed, taking credit for all advance payments made. There shall be no dirt or shale removed by Vendees beneath the existing ground level of Indiana State Road 111, that bounds vendors property. No dirt or shale shall be removed closer than 200 feet from the dam now existing on Vendors property. At the completion of the contract Vendees will adjust the estimated yardage of materials moved to meet the actual cross-sections produced by the Kentucky Highway Department and account for same to Vendor. The Vendees agree to hold Vendors harmless from any damage caused by their operations to any part of Vendors land and to supply Vendor with a $50,000.00 indemnification *54 bond from a reputable Indemnity Company. The ground herein conveyed is a part of the land of Vendors known as "Reidland" and located on Five Mile Lane, Floyd County, Indiana; said parcel hereinabove referred to being more particularly described as: "A hill approximately 1100 feet directly south of Dairy Barn of Vendors property beginning at elevation same as Roadway 111 rising to an elevation approximately 100 feet above Road 111 being approximately 20 acres and containing approximately 300,000 cubic yards of dirt and shale." 1020 Upon default this contract is to be cancelled and the Vendee shall reconvey all the remaining property to the Vendor. The Vendee is given three (3) years within which to remove all dirt and shale after which its rights shall be terminated and the property shall revert to the Vendor, the Vendee to execute a reconveyance of the remaining property. It is understood that should the dirt and shale above mentioned not meet the specifications of the Federal Bureau of Roads and the State of Kentucky, that this contract shall be null and void and this property shall revert back to the Vendor who shall refund to the Vendee the $1,500.00 advance payment. *55 The Vendee agrees within 10 days from the execution of this contract to enter upon Vendor's land and make all tests necessary to determine whether said dirt and shale meets the specifications of the Federal Bureau of Roads and the State of Kentucky. This contract was not recorded with the Recorder of Floyd County, Ind., or elsewhere. The Potasnick-Barter venture immediately proceeded to remove dirt and shale from the petitioners' farm and paid the petitioners pursuant to the contract the following amounts: August 1967
$ 1,126.07
October 1967
12,154.00
November 1967
473.93
December 1967 7,641.90
Total in 1967 $21,395.90
January 1968
$ 5,000.10
May 1968
9,604.50
July 1968
8,830.90
August 1968
3,303.10
November 1968 500.00
Total in 1968 $27,238.60 Petitioners did not participate in any manner in the excavating operation nor have they ever engaged in any excavating operation. Petitioners have, since 1968, continued to operate the property which they own in Floyd County, Ind. (which contains the area in which the Potasnick-Barter venture removed dirt and shale) as a farm, principally conducting a dairy farming operation. The area where *56 the Potasnick-Barter venture excavated dirt and shale was originally used by petitioners for pasture land and had a barn and silo adjoining. These buildings were destroyed as a result of the excavations. The excavated land can no longer be used as pasture, will not support vegetation, and remains muddy throughout most of the year. The excavated land cannot be used for any farming purpose by petitioners. Petitioners have at all times paid the real estate taxes assessed against the property in Floyd County, Ind. The Potasnick-Barter venture did not reconvey the excavated property to petitioners after finishing the excavations. Prior to 1967 petitioners had not engaged in the business of selling dirt and shale and had not entered into an agreement similar to the Potasnick-Barter venture contract. In 1969 petitioners entered into a lease agreement with another party for the removal of dirt and shale from the same general area which had previously been excavated. Petitioners were to be paid $.10 per cubic yard of material removed, and 161,818 and 107,115 cubic yards of dirt and shale were removed during 1969 and 1970, respectively. This material was removed from the perimeter of the *57 area that the Potasnick-Barter venture had excavated. Opinion Along with progress the construction of the interstate highway system has brought forth a number of cases like the present one. Petitioners sold dirt and shale from their farm to a joint venture that was working on a highway project. Petitioners reported the amounts received under their contract with the venture as long-term capital gain; respondent determined that the amounts represented ordinary income. We have noted before that the facts of many of the dirt cases bear marked similarities to each other but that some taxpayers succeed in obtaining capital gains treatment while others fail. Compare , with , on appeal (C.A. 7, November 5, 1971). The key to obtaining capital gains is to sell the materials in place, which is usually considered to be an unconditional sale of all the materials situated within a particular area. ; . On the other hand, if the purchaser of the materials is only obligated to extract as much material as he *58 desires, the seller's 1021 profit is dependent upon extraction. In such case, the seller has retained an economic interest in the materials in place and his profits from the sale represent ordinary income. ; . In this case the agreement between petitioners and the Potasnick-Barter venture purports to sell to the venture all of the dirt and shale lying within a designated area; however, respondent contends that the venture's obligation to purchase dirt was only conditional. Although it is true that the agreement provided that if the dirt and shale did not meet the specifications of governmental agencies the contract would be null and void, we believe that the venture was obligated to remove all the dirt from the designated area once the contract became effective. The provisions in the agreement to which respondent objects merely required the purchaser to determine within 10 days after signing whether petitioners' materials met necessary specifications. If the specifications were met, the venture had to excavate all of the dirt and shale; if they were not *59 met, the deal was off entirely. This specifications condition differs from the conditions which caused denial of capital gains treatment in , and , on appeal (C.A. 3, March 10, 1971). In Ellis the purchaser could refuse to excavate all of the materials in place if some of them failed to meet specifications, and in Walker the amount of dirt excavated was dependent upon market demand for dirt. Where in Ellis and Walker the purchaser could extract some of the dirt but was not obligated to excavate all of the dirt, the venture here was so obligated if it excavated any of the dirt. Respondent also contends that petitioners' agreement with the venture could not have encompassed all of the dirt in place because petitioners later sold dirt to another party from the area which the venture had excavated. We are convinced from the record that petitioners' second sale of dirt was not the same dirt originally sold to the venture but dirt removed from the perimeter of the first excavation. In , we found the fact that the parties reasonably estimated the amount of *60 dirt lying within a specified area to be an indication of a sale of dirt in place. In this case the agreement between petitioner and the venture estimated that there were about 300,000 cubic yards of dirt and shale in place when in fact about half again as much as that amount was extracted. The discrepancy between the amount of dirt and shale estimated to exist and the amount extracted does tend to show that there was not a sale of materials in place, but the estimate of the amount of dirt to be sold is only one of several factors to be considered. We note that petitioners had never sold dirt from their land prior to the agreement with the venture, that the dirt was removed in a resonably short time, and that the excavated portion of petitioners' land was unusable after removal of the dirt. These factors have been held to be indicative of a sale of materials in place. ; . In view of the foregoing we hold that the agreement between petitioners and the Potasnick-Barter venture was a sale of dirt and shale in place entitled to capital gains treatment. Decision will be entered under Rule 50.